O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HAORU NIU, | ) | Case No. CV 11-04317 DDP (Ex) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING PLAINTIFF'S <u>EX PARTE</u> APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | [Docket No. 14] |
| Defendant. | ) | |

Presently before the court is Plaintiff Dr. Haoru Niu's Ex Parte Application for a Temporary Restraining Order ("TRO") and Order to Show Cause Regarding a Preliminary Injunction. The court has considered the materials submitted by the parties and GRANTS Plaintiff's application.

**I. BACKGROUND**

Dr. Niu is a medical doctor and doctor of philosophy in biochemistry with a concentration in molecular genetics. He is a citizen of China but has been in the United States since 2000 on visiting scholar and specialty worker visas. Since 2002, he has worked as a research associate at the House Research Institute in Los Angeles. (Compl. ¶¶ 3, 30.) The Institute is widely known to be one of the world's premier research centers for deafness, and

its discoveries have led to improved treatment for millions.[1]  Dr. Niu, in particular, is conducting genetic research, including the identification and cloning of "mammalian modifier genes," to find a cure for two common causes of deafness.  (Id. ¶ 9.)  In the past five years, Dr. Niu has authored at least two relevant articles in peer reviewed journals.[2]  Dr. Niu details many other notable research accomplishments in his complaint.  (Id. ¶¶ 2-3, 7-9, 18-22.)

In July 2007, Dr. Niu filed an I-140 visa petition on his own, requesting a national interest waiver of the normal requirement that an employer petition for him.  See 8 U.S.C. § 1153(b)(2)(B). He filed an I-485 application to adjust status to legal permanent resident, based on the petition, at the same time.  Almost two years later, in March and April 2009, United States Citizenship and Immigration Services ("USCIS") denied Dr. Niu's petition and application.  Immediately after, in May 2009, the House Research Institute filed an I-140 visa petition for Dr. Niu as an "outstanding researcher."  See 8 U.S.C. § 1153(b)(1)(B).  Dr. Niu submitted a new I-485 adjustment of status application along with the petition.  In December 2009, still waiting for a response, the Institute filed a second, materially identical I-140 visa petition for Dr. Niu.  USCIS approved this second outstanding researcher petition on January 22, 2010, but then inexplicably denied the first petition on January 28, 2010.  Accordingly, on March 29,

---

[1] See http://hei.org/about/history/history.html.  The court takes judicial notice of relevant facts regarding the House Research Institute and Dr. Niu from the Institute's website.

[2] See http://houseinstitute.org/research/friedman/publications.

2

2010, Dr. Niu asked USCIS to transfer the approved I-140 petition to his still pending I-485 adjustment of status application. On July 2, 2010, however, USCIS denied the I-485 application, because it had denied the first outstanding researcher petition and refused to apply the second, approved petition. Dr. Niu therefore filed a motion to reconsider the denial of his I-485 application, on July 26, 2010, as well as a new I-485 application based on the approved petition, on August 3, 2010. USCIS eventually denied both the motion to reconsider and the new I-485 application, in October 2010 and April 2011 respectively. USCIS denied the I-485 application because Dr. Niu had ostensibly been without legal status for more than 180 days at the time of filing, as his final temporary visa had expired on June 1, 2009. See 8 U.S.C. § 1255(c)(2), (k). (Compl. ¶¶ 33-49.)

On May 19, 2011, Dr. Niu filed a complaint against the United States and various immigration officials, seeking remedies under the Administrative Procedure Act for Defendants' allegedly arbitrary and capricious denials of his petitions and applications. See 5 U.S.C. §§ 702, 706. On September 28, 2011, Defendants informed Dr. Niu of their intent to revoke or issue a notice of intent to revoke his approved I-140 petition. (Darbinian Decl. ¶ 1.) Dr. Niu therefore filed this TRO application on October 4, 2011, asking the court to enjoin Defendants from taking such action.

**II.  Legal Standard**

"Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." Bender v. Olivieri, No. 11-CV-00172, 2011 WL 691417, at *2 (D. Nev. Feb. 18,

2011); see also Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating the standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction).  Therefore, "[a] plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Am. Trucking Ass'ns v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  "A preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2010) (omission in original).  A TRO is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.  Winter, 555 U.S. at 22.

**III. Discussion**

Dr. Niu has demonstrated that he is likely to suffer irreparable harm unless Defendants are enjoined from revoking his approved I-140 petition.  By all accounts, an approved petition is necessary for Dr. Niu to adjust status and obtain permanent residency.  It is immaterial that, as Defendants argue, Dr. Niu would be able to respond to a revocation notice and appeal any revocation decision.  See 8 C.F.R. §§ 205.2, 1003.3.  Defendants' prior denials of Dr. Niu's petitions and applications, along with this most recent adverse initiative, evidence the likelihood of revocation and hence irreparable harm to Dr. Niu - indeed, why

4

would Defendants seek revocation if they did not believe it was both likely and material to Dr. Niu's immigration options?

Because Defendants would suffer no discernible hardship, the balance of equities also weigh strongly in Dr. Niu's favor. Against the likely harm to Dr. Niu, Defendants allege only the generalized inconvenience to USCIS of being restrained from "revok[ing] a petition when appropriate to do so." (Defs.' Opp'n 4:27.) They detail no specific hardship that would result from such restraint in this single instance. The injunction is clearly in the public interest as well. If Dr. Niu's approved petition were revoked, he would be unable to obtain permanent residence in the United States and continue his critical research at the House Institute into cures for deafness.

Finally, Dr. Niu has shown a likelihood of success on the merits. It appears that Dr. Niu meets the statutory requirements for an outstanding researcher. See Gulen v. Chertoff, Civ. Action No. 07-2148, 2008 WL 2779001, at *1 (E.D. Pa. July 16, 2008) (explaining that 8 U.S.C. § 1153(b)(1) "requires the issuance of a visa to [immigrants] who meet the statutory qualifications"). An immigrant qualifies as an outstanding researcher if he or she: 1) "is recognized internationally as outstanding in a specific academic area"; 2) "has at least 3 years of experience in teaching or research in the academic area"; and 3) seeks to enter the United States for a qualifying teaching or research position in that area. 8 U.S.C. § 1153(b)(1)(B); see also 8 C.F.R. § 204.5(i)(3) (detailing the evidence that would meet these requirements).

As noted, Dr. Niu has made original research contributions to the field of genetics and authored relevant scholarly articles in

Case 2:11-cv-04317-DDP-E   Document 16   Filed 10/11/11   Page 6 of 8   Page ID #:127

peer review journals.  These two facts qualify Dr. Niu as an internationally recognized researcher in genetics.  See 8 C.F.R. § 204.5(i)(3)(i)(E)-(F).  Dr. Niu meets the second and third requirements as well, as he has been conducting genetic research at the internationally acclaimed House Research Institute for the past nine years.  See 8 C.F.R. § 204.5(ii)-(iii).  It is therefore likely that USCIS's denial of Dr. Niu's initial outstanding researcher petition was an abuse of discretion.  See Kazarian v. U.S. Citizenship & Immigration Servs., 596 F.3d 1115, 1118 (9th Cir. 2010) ("We have held it an abuse of discretion for the Service to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." (quoting Tongatapu Woodcraft Hawaii Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984))).

Dr. Niu also persuasively argues that it was arbitrary and capricious for USCIS to refuse to apply his approved I-140 petition to his earlier, still pending I-485 application.  Defendants justify their refusal with citation to 8 C.F.R. § 204.5(e) and a May 9, 2000 memorandum by USCIS Executive Associate Commissioner Michael A. Pearson.  However, neither support Defendants' position.  The regulation and memo primarily address retention of an earlier "priority date," which is not at issue here.  Moreover, relevant to Dr. Niu's request, the memo in fact states that "[t]ransferring a second approved I-140 to a pending adjustment application is generally available to the beneficiary until the I-485 is finally adjudicated."

Lastly, USCIS likely abused its discretion by denying Dr. Niu's final I-485 application, based on the approved I-140

6

petition, because of his apparent failure to maintain lawful immigration status from June 2, 2009 to August 3, 2010.  See 8 U.S.C. §§ 1255(c)(2), (k).  Such failure does not preclude an immigrant's adjustment of status if it was "through no fault of his own or for technical reasons."  Id. § 1255(c)(2).  Here, Dr. Niu waited from July 2007 to April 2009 for USCIS to adjudicate his initial national interest petition and application.  The House Research institute and Dr. Niu then immediately submitted the first outstanding researcher petition and application, before Dr. Niu's lawful status expired.  USCIS, however, waited until July 2010 to deny the application, at which point Dr. Niu promptly moved for reconsideration and filed the final I-485 application.  In short, Dr. Niu diligently pursued his immigration options and would have maintained lawful status throughout, but for the three years of delay by USCIS.  See Wong v. Napolitano, No. CV08-937-ST, 2010 WL 916274, at *14-15 (D. Or. Mar. 10, 2010) (finding USCIS's construction of the no fault exception impermissibly narrow); Alimoradi v. U.S. Citizenship & Immigration Servs., No. CV08-02529, at 8-14 (C.D. Cal. Feb. 10, 2009) (same).

**IV. Conclusion**

For the reasons stated above, Plaintiffs' Application for a Temporary Restraining Order and Order to Show Cause for Preliminary Injunction is GRANTED.  Defendants are hereby ENJOINED from taking any adverse immigration action toward Plaintiff, including revoking or issuing a notice of intent to revoke his approved I-140 visa

///

///

///

1  petition.  This injunction shall remain in effect until a court
2  order to the contrary.  In addition, a Preliminary Injunction
3  Hearing is set for Thursday, October 20, 2011, at 10:30 am.

5  IT IS SO ORDERED.

7  Dated: October 11, 2011
                                    DEAN D. PREGERSON
                                    United States District Judge

8